650 So.2d 433 (1995)
STATE of Louisiana In the Interest of L.H.
No. CR94-903.
Court of Appeal of Louisiana, Third Circuit.
February 15, 1995.
*434 Edward P. Chevallier Jr., Don M. Burkett, Many, for State of Louisiana.
Joseph David Toups Jr., Mansfield, for L.H.
Before KNOLL, SAUNDERS and AMY, JJ.
KNOLL, Judge.
This appeal concerns a juvenile's adjudication of delinquency for one count of attempted second-degree murder, a violation of LSA-R.S. 14:27 and 14:30.1(A)(1). The court sentenced L.H., who was fourteen years of age at the time of the offense, to placement in the custody of the State of Louisiana not to exceed his 21st birthday. Raising only the issue of sufficiency of the evidence, the juvenile appeals his conviction.[1] We affirm.

FACTS
On April 3, 1994, a party was held at the National Guard Armory in Many, Louisiana. As the party was winding down and guests were beginning to leave, L.H. and the victim, R.L.,[2] exchanged words. L.H. walked up a flight of stairs which led to the street, turned around, pulled a .380 caliber semi-automatic weapon from under his clothing, and began to fire. R.L. was shot twice, with wounds to his shoulder and buttocks. L.H. was apprehended after the shooting and his mother turned the gun over to police.

LAW
In order for the court to adjudicate a child delinquent, the state must prove beyond a reasonable doubt that the child committed the delinquent act alleged in the petition. *435 LSA-Ch.C. Art. 883. The burden of proof is no less in a juvenile adjudication than that required of the state in a criminal proceeding against an adult. State in the Interest of J.W., 597 So.2d 1056 (La.App. 2d Cir.1992). When reviewing the sufficiency of the evidence to support a juvenile adjudication, an appellate court is limited to a determination of whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found, from the evidence adduced, proof of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State in the Interest of J.W., supra. It is the role of the fact finder to weigh the respective credibility of the witnesses; the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983) (citing State v. Richardson, 425 So.2d 1228 (La.1983)). Therefore, in a juvenile proceeding, when there is evidence before the trier of fact that, upon its reasonable evaluation of credibility, furnished a factual basis for its finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. State in the Interest of Racine, 433 So.2d 243 (La.App. 1st Cir.), writ denied, 440 So.2d 151 (La.1983).
To support L.H.'s adjudication of delinquency for attempted second-degree murder, the state must prove beyond a reasonable doubt that L.H. had specific intent to kill a human being and committed an act tending to accomplish that purpose. State v. Butler, 322 So.2d 189 (La.1975). Specific criminal intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Although intent is a question of fact, it need not be proved as a fact and may be inferred from the circumstances of the transaction. State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La. 1993).
At trial, there was some conflicting testimony presented as to the events surrounding the shooting at the National Guard Armory. The first witness, Kelvin Gosey, stated:
"Well [L.H.] came through and him and [R.L.] started looking at each other. So [R.L.] said, what's up or something and [L.H.] went on up the steps, and when he go up the steps he had his hand in his pants, and I said, you ain't got to have your hand in your pants like that, after that he just turned around and started shooting."
When asked at whom L.H. was shooting, the witness replied, "Well, all three of us were standing there together so I couldn't really say ..."
Cartrell Williams, the brother of the victim, gave a similar version of the incident, but when asked at whom L.H. was shooting, he replied, "When he pulled it, probably [R.L.] because we was all standing there together.... He had to be shooting at [R.L.] because if [L.H.] wanted to he could have got all of us, because we was all just right there ..."
Robert C. Lilly, III testified that he was walking his girlfriend to the car when he heard an argument, then saw L.H. pull out a gun and shoot R.L. He stated that as R.L. began running away, L.H. was still shooting. This testimony is supported by that of Officer James Napier of the Sabine Parish Sheriff's Department, who investigated the incident. His search of the armory premises turned up three spent shells from a .380 caliber weapon. These shells were found at the bottom of the staircase leading to the street. Officer Napier later discovered a fourth spent shell approximately ten feet from where he had found the others. At the adjudication hearing, Officer Napier opined that the shooting had occurred on the steps and then progressed down the sidewalk, "like the victim had run or moved and the subject that had the pistol had moved down shooting..."
The victim, R.L., testified that as he left the party, L.H. was walking "like a gangster and stuff" and kept "looking at me all funny" with his hand underneath his shirt. As L.H. *436 walked up the stairs leading to the highway, he began cursing at R.L. When L.H. reached the top of the stairs, he brought out a gun. R.L. testified that just as he began to run, the first bullet struck him in the shoulder. He took two steps before a second bullet hit him in the buttocks.
L.H. testified on his own behalf at the adjudication hearing. He stated that the victim's version of the incident was inaccurate. L.H. said that as he was leaving the party, he ran into R.L.:
"I tried walking around, and he stepped back in front of me, and I walked the other way, and went backI stepped back around ... and he said, you old one big gangster, and I said, whatever cuz, and kept on walking on up the stairs, and he came behind me, and he said, what do you want to do, and I said, whatever cuz, and that is how I continued up the stairs, and my pants had dropped, and I grabbed my pocket, and started pulling my pants back up, and once I got up to the top of the stairs, and one of his friends said, don't go in your pocket, and I turned around, and he had a gunhe was pulling a gun out of his pants, he said  I said, it ain't no need for that, we can fight if you want to, and I got to the top of the stairs, and a car pulledand heone of his other friends shot at me, and I thought he hit me because somebody was hit, and I fell back, and the car pulled up behind us, and started shooting, and I got scared, and I just started shooting."
After hearing the conflicting testimony and observing the witnesses, the trial judge made the following comments at the conclusion of the evidence:
"[L.H.], it is absolutely inconceivable to me that all of these bullets could be flying and nobody see or hear them flying but you. Even your friend who came down here from Pleasant Hill and testified did not testify regarding anybody shooting at you or any cars pulling up with guns blazing or anything of that nature, and quite frankly I find your story next to impossible to believe.... [T]here are parts of your testimony that are absolutely inconsistent ... with the physical findings at the scene. The Court finds that the State has carried their burden of proving beyond a reasonable doubt that you did commit the offense of which you are charged ..."
Viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that L.H. had specific intent to kill a human being when he began to shoot. Whether L.H. aimed directly and intentionally towards R.L., or merely fired random shots into a crowd, is of no moment. Either is indicative of an intent to kill. State v. Moody, 587 So.2d 183 (La.App. 3d Cir. 1991) (defendant aimed a firearm directly at the victim); State v. Kennington, 515 So.2d 521 (La.App. 1st Cir.1987) (defendant aimed a firearm in the direction of a crowd of bystanders). As there was sufficient evidence before the trier of fact to support its finding, State in the Interest of Racine, supra, the juvenile's adjudication as a delinquent for attempted second-degree murder will not be disturbed by this court.
AFFIRMED.
NOTES
[1] Pursuant to LSA-C.Cr.P. Art. 920, we have carefully examined the record for errors patent, and note that in the amending petition charging the juvenile with one count of attempted second-degree murder, LSA-R.S. 14:103.1 was cited instead of LSA-R.S. 14:30.1. However, a defect of form is not grounds for dismissal of a petition or invalidation of the proceedings unless it results in substantial prejudice. LSA-Ch.C. Art. 844(D). In the case sub judice, the juvenile was adequately informed of the offense with which he was charged, and suffered no prejudice by the erroneous citation of the second-degree murder statute. See State v. Dugas, 527 So.2d 610 (La.App. 3d Cir.), writ denied, 533 So.2d 15 (La.1988). We find this error harmless.
[2] To protect the identities of the juveniles involved in this case, we will refer to the defendant and the victim by their initials throughout this opinion.