NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**08-109**

STATE OF LOUISIANA

VERSUS

TYRONE SMITH

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 05-2054
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Elizabeth A. Pickett, Judges.

AFFIRMED.

J. Phillip Haney
District Attorney, 16th Judicial District Court
300 Iberia Street - Suite 200
New Iberia, LA 70560
Telephone: (337) 369-4420
COUNSEL FOR:
     Plaintiff/Appellee - State of Louisiana

**Richard Allen Spears**
**P. O. Box 11858**
**New Iberia, LA 70560**
**Telephone:  (337) 367-1960**
**COUNSEL FOR:**
        **Defendant/Appellant - Tyrone Smith**

**THIBODEAUX, Chief Judge.**

The Defendant, Tyrone Smith, appeals his jury conviction of attempted second degree murder, a violation of La.R.S. 14:27 and 14:30.1.  He argues that the evidence presented against him was insufficient to support the conviction.  For the following reasons, the conviction is affirmed.

## ISSUE

Is the evidence, viewed in the light most favorable to the prosecution, sufficient to support the conviction of attempted second degree murder?

## FACTUAL BACKGROUND

Defendant, Tyrone Smith, was found guilty by a jury of one count of attempted second degree murder in violation of La.R.S. 14:27 and 14:30.1.  The Defendant was subsequently charged as, and found to be, a habitual offender.  He was sentenced to thirty years at hard labor without benefit of probation, parole, or suspension of sentence.

The shooting at issue occurred on the night of October 7, 2005, shortly after the end of a local high school football game in New Iberia, Louisiana.  After the game ended, fifteen-year-old T.W.[1] and his friends, D.J. and J.S., walked from the football stadium to nearby Bank Street.  They were on their way to the parking lot of the nearby elementary school with the intention of meeting and talking with some of the game's football players who were congregated there.  While walking, the boys passed a house located at 525 Bank Street, outside of which another group of young people had congregated.  T.W. and his friends walked past the house without incident.

---

[1] Pursuant to La.R.S. 46:1844(W), this opinion refers to the minor victim and his group of friends by their initials in order to protect the victim's identity.

The three boys reached their destination, spoke with their friends and one of the football coaches who also happened to have been parked at the elementary school. After speaking for about ten minutes, T.W. and his friends began the walk back towards the stadium, retracing their route. The group of young people, of which the Defendant was a part, was still located in front of 525 Bank Street. As T.W. and his friends passed the house this time, a mutual exchange of hostile words took place between one or more of the young men at the Bank Street house and one or more of the young men in T.W.'s group, i.e., "What you looking at?"

One of the persons involved in the exchange was C.J., who lived at 525 Bank Street. According to T.W. and D.J., their friend J.S., the third member of their group, continued the verbal confrontation with C.J. as they walked past the house. T.W. testified that as they walked past the house and further down the road, he saw C.J. grab and shake the front of his pants, which T.W. interpreted as an indication of C.J.'s possession of a weapon. D.J. then saw C.J. holding the weapon. T.W. testified that one of his friends said, "That's [C.J.]. He ain't gonna do nothing with – with what he got." The statement about C.J. was followed by, "That's Tyrone , though. He gonna shoot y'all. Run."

The three boys ran towards the intersection of Bank Street and Hacker Street and turned right onto Hacker, while hearing gunshots continuously being fired. J.S. testified that after about six shots had been fired, he looked back and saw a black male, with a similar light-brown complexion as that of the Defendant, shooting a gun at them; however, he was unable to identify the Defendant as the shooter.

D.J. testified that after turning at the intersection onto Hacker Street, he ran down Hacker towards its intersection with Henshaw Street. Once he reached that intersection, he testified that he stopped running, looked back, and saw the Defendant near the corner of Bank and Hacker streets, firing a gun in the direction of his two

2

friends. Although the neighboring football stadium's lights were off by this time, D.J. testified that street lights at the corner of Bank and Hacker, where the Defendant was located, illuminated the area in which the Defendant was standing.

As the shots were being fired, J.S. and D.J. both testified that T.W. fell to the ground, appearing to have been shot in the back while running away. They testified that after T.W. fell, the Defendant stopped shooting and ran in the opposite direction. The boys flagged down a vehicle, laid T.W. on the back seat, and drove to T.W.'s home where they alerted T.W.'s mother and called an ambulance. There, D.J. informed T.W.'s mother that T.W. had been shot by the Defendant. T.W.'s shirt that was removed by paramedics revealed a bullet hole in the back. It was confirmed that a bullet had entered T.W.'s body from the rear and was lodged in his pelvis. The bullet was surgically removed from the area beneath T.W.'s ribs because of life-threatening internal damage and bleeding.

The Defendant challenges his conviction, asserting that D.J.'s identification of him was unreliable because it was dark, D.J. was a distance of more than thirty yards away from the purported shooter, and D.J. was in the midst of running from gunfire. He also claims that his conviction is uncorroborated by any direct evidence. He asserts that the State, through its expert witness in DNA analysis, Mr. George Schiro of the Acadiana Crime Lab, testified of the failure to obtain a DNA profile from the .380 calibur bullet casing that was found by the officers investigating the scene. In addition, he asserts that the state's witness, Officer Scott Thomas Hotard, Supervisor of the Iberia Parish Sheriff's Office Detective's Division, testified that the gunshot residue kit that had been completed by taking specimens from the Defendant's hands, resulted in inconclusive results. The compounds signifying the presence of gunpowder were not detected in the specimens taken from the Defendant. Although it was asserted by the State that the gun shots may not have

3

deposited any residue or that the Defendant could have caused this result by washing or wiping his hands after firing the weapon, this explanation was challenged by the Defendant who contends that his hands had not been washed and were still dirty from having worked on a car that day. Accordingly, the Defendant contends that his conviction should be reversed and his sentence vacated.

## LAW AND ANALYSIS

### Errors Patent

The record does not indicate that the Defendant was advised of his right to remain silent, his right to a hearing, and his right to have the State prove its case against him, concerning the habitual offender proceedings. This court has found the failure to advise a defendant of the right to remain silent and to have the state prove its case against him is harmless, nevertheless, when the defendant is adjudicated a habitual offender after a full hearing, and the defendant does not testify or acknowledge his status as a habitual offender. *See State v. Alexander*, 05-276, 05-277 (La.App. 3 Cir. 11/2/05), 916 So.2d 303. In the present case, the Defendant stipulated that the predicate offense was valid.

In *State v. Payne,* 94-1628 (La.App. 3 Cir. 5/22/96), 677 So.2d 527, this court recognized as an error patent the trial court's failure to advise the defendant of his right to remain silent prior to pleading guilty to his multiple offender status. During the habitual offender proceeding, the defendant took the stand and admitted having been convicted of the prior offense as part of the plea agreement; the State presented no evidence to prove the defendant's habitual offender status. This court held, in pertinent part:

> In *State v. Johnson*, 432 So.2d 815 (La.1983), defendant was determined by the trial court to be a habitual offender and sentenced to twenty-four years at hard labor. At the hearing, defendant pled *not guilty*. No evidence was

4

presented by the state that defendant was the same person who had been previously convicted. The trial court, over the objection of counsel, *compelled* defendant to testify. The supreme court reversed and vacated the sentence. The court stated:

> This section of the statute clearly recognizes that the defendant, if he chooses, has the right to remain silent. Once the defendant chooses to remain silent the state must then by competent evidence prove the elements of R.S.15:529.1 before the defendant can be sentenced as an habitual offender. Before the defendant chooses to acknowledge or confess in open court that he has been previously convicted of a felony, the statute requires that he first be cautioned by the trial court as to his rights. R.S. 15:529.1(D) specifically provides that defendant be advised by the court of his right to a "formal hearing" and to have the state prove its case. *State v. Martin*, 427 So.2d 1182 (La.1983). Further, this section implicitly provides that the defendant should be advised, by the court, of his statutory right to remain silent.

*Id*. at 817.

More recently, in *State v. Harris*, 654 So.2d 680, the supreme court, in an application for post-conviction relief, stated:

> Admissions of identity at a multiple offender hearing implicate the defendant's Fifth Amendment privilege against self-incrimination. *State v. Johnson*, 432 So.2d 815 (La.1983). Nevertheless, multiple offender proceedings "simply should not be equated (at least for purposes of determining the validity of an admission) to trials of guilt or innocence." *State v. Martin*, 427 So.2d 1182, 1185 (La.1983). This Court has therefore declined to adopt as a constitutional prerequisite to a valid admission of identity at a multiple offender proceeding a procedure analogous to the *Boykin* colloquy which must accompany a valid plea of guilty. *Id*., 427 So.2d at 1185, n. 7. In the absence of any allegation or showing that the admission was involuntary, *compare State v. Johnson*, *supra*,

the availability of post-conviction relief turns on whether the proceedings as a whole accorded the petitioner fundamental fairness and due process of law. *See*, *Holloway v. Lynaugh*, 838 F.2d 792 (5th Cir.), cert. denied, 488 U.S. 838, 109 S.Ct. 104, 102 L.Ed.2d 80 (1988); *State v. Firmin*, 522 So.2d 1181 (La.App. 4th Cir.), writ denied, 532 So.2d 759 (La.1988).

In the case *sub judice*, unlike in *Harris*, no independent evidence was introduced by the state to prove defendant was the same person previously convicted of a predicate felony. However, our review of the record convinces us that "the proceedings as a whole accorded the (defendant) fundamental fairness and due process."

. . . .

There have been no allegations or showing that the admission was involuntary. Defendant was represented by counsel at the hearing, he was informed of the allegations in the multiple offender bill and he was advised of his right to a hearing wherein the state would have the burden of proving he was the same person previously convicted of the predicate offense. Furthermore, the admission was part of a plea agreement and defendant was fully apprised of the sentence he was to receive.

*Id*. at 528-30.

In this case, although the record before this court does not reflect that the Defendant was advised of his right to a hearing and his right to have the State prove its case, the Defendant was adjudicated a habitual offender after a full hearing at which the State presented evidence of his habitual offender status both through documentary evidence and testimony of his probation officer who supervised his probation for the prior offense. Additionally, although the Defendant stipulated to the validity of his prior conviction without first being advised of his right to remain silent, unlike in *Johnson*, there is no indication that the admission, made through counsel, was involuntary. Accordingly, after reviewing the record, we find that the

trial court's failure to advise the Defendant of his rights was harmless in this instance, and he was afforded a fair hearing.

## Sufficiency of the Evidence

The Defendant argues that "[t]he jury erred in convicting [him despite] a serious lack of evidence." The Defendant contests the credibility of the witness who identified him as the shooter by pointing out that the witness would have been under the influence of adrenaline due to the gunfire, that it was dark at the time of the shooting, and that the witness was more than thirty yards away from the perpetrator. The Defendant further urges this court to overturn his conviction because there was no DNA evidence found on the spent shell casing, because the Defendant had no gunshot residue on his hand, and because officers were unable to locate a weapon when they searched the Defendant's house.

In reviewing the sufficiency of evidence, this court views the evidence in the light most favorable to the prosecution in order to evaluate whether a rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witness. Therefore, the appellate court should not second-guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See King*, 436 So.2d 559, citing *State v. Richardson*, 425 So.2d 1228 (La.1983).

*State v. Lambert*, 97-64, pp. 4-5 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, 726-27. Thus, "[i]t is not the function of an appellate court to assess credibility or reweigh the evidence." *State v. Smith*, 94-3116, p. 2 (La. 10/16/95), 661 So.2d 442, 443.

An attempt to commit a crime occurs when "[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object . . . ." La.R.S. 14:27. Thus, attempted second degree murder occurs when the defendant intends to commit a second degree murder and acts to kill a human being. La.R.S. 14:30.1.

When the evidence is viewed in the light most favorable to the prosecution, the State proved at trial that the Defendant aimed into the group of running teenagers, that the Defendant fired his weapon multiple times, and that one of the resulting projectiles hit T.W., causing a potentially fatal wound. An eyewitness saw the perpetrator, illuminated by streetlights, shoot at the fleeing teens; that eyewitness positively identified the Defendant as the shooter.

In *State in Interest of L.H.*, 94-903 (La.App. 3 Cir. 2/15/95), 650 So.2d 433, this court found sufficient evidence to support an adjudication of delinquency for attempted second degree murder. The evidence presented at trial showed that the defendant discharged a firearm, which he had pointed either toward one victim or a small group of people. This court determined that, either way, there was sufficient evidence to affirm the defendant's adjudication.

This court has also affirmed a conviction for attempted second degree murder where the defendant shot at one person with the intent to kill that person but actually hit a bystander. *State v. Hall*, 606 So.2d 972 (La.App. 3 Cir. 1992), *writ denied*, 93-51 (La. 11/11/94), 644 So.2d 385. This court found that, by discharging a weapon aimed at one person while a bystander stood next to the intended victim, the defendant demonstrated he actively desired to kill or inflict great bodily harm.

*Hall*, 606 So.2d 972. "The law does not require that the intent to kill be of the specific victim but only that the defendant had the intent to kill someone." *Id*. at 976.

When the evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could have found the State proved the Defendant to be guilty of the charged offense beyond a reasonable doubt. Accordingly, the Defendant's assignment of error is without merit.

## **CONCLUSION**

The Defendant's conviction and sentence are affirmed.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules—Courts of Appeal.