# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**13-497**

STATE OF LOUISIANA

VERSUS

WARDELL CHRISTOPHER WILLIAMS

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 306,283
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

**********

**MARC T. AMY
JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**James C. Downs
District Attorney
Michael W. Shannon
Assistant District Attorney
Post Office Drawer 1472
Alexandria, LA   71309
(318) 473-6650
COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Annette Fuller Roach
Louisiana Appellate Project
Post Office Box 1747
Lake Charles, LA   70602-1747
(337) 436-2900
COUNSEL FOR DEFENDANT/APPELLANT:**
     **Wardell Christopher Williams**

Wardell Christopher Williams
Dixon Correctional Institute/ U-1-D-G
Post Office Box 788
Jackson, LA   70748-0788
IN PROPER PERSON

Wardell Christopher Williams
Dixon Correctional Institute/ U-1-D-G
Post Office Box 788
Jackson, LA   70748-0788
IN PROPER PERSON

**AMY, Judge.**

The defendant was found guilty of three counts of attempted second degree murder and one count of possession of a firearm by a convicted felon. The trial court imposed sentences of forty years at hard labor for each of the defendant's three convictions for attempted second degree murder, and ten years at hard labor for his conviction for possession of a firearm by a convicted felon. The trial court ordered that the defendant's sentences run concurrently with each other and that they be served without the benefit of probation, parole, or other suspension of sentence. The defendant appeals. For the following reasons, we affirm.

## Factual and Procedural Background

According to the record, in the early morning hours of October 24, 2010, several shots were fired in a crowded nightclub in Alexandria, Louisiana. Three nightclub patrons suffered gunshot wounds. According to the State, the defendant, Wardell Christopher Williams, repeatedly asked a woman in the group that included the victims to dance and was rebuffed. One of the victims asked the defendant to leave the woman alone. The State contends that the defendant was in possession of a .380 Bersa pistol that was linked to the shooting. Additionally, the State contends that the defendant confessed to the crime. The defendant was subsequently charged with three counts of attempted second degree murder, violations of La.R.S. 14:27 and La.R.S. 14:30.1, and one count of possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. After a trial, the jury found the defendant guilty of all four counts of the bill of information.

For each of the three counts of attempted second degree murder, the trial court imposed sentences of forty years at hard labor. For the count of possession of a firearm by a convicted felon, the trial court imposed a sentence of ten years at

hard labor.  Further, the trial court ordered that the defendant's sentences be served concurrently to each other and that they be served without benefit of probation, parole, or suspension of sentence.

The defendant appeals.  He asserts that:

1. The evidence admitted at the trial of this case, when viewed under the *Jackson v. Virginia* standard, was insufficient to prove beyond a reasonable doubt that Wardell Williams either directly committed or was a principal to attempted second degree murder of Carmilla Peterson.

2. The evidence admitted at the trial of this case, when viewed under the *Jackson v. Virginia* standard, was insufficient to prove beyond a reasonable doubt that Wardell Williams either directly committed or was a principal to attempted second degree murder of Ernest Sherman.

3. The evidence admitted at the trial of this case, when viewed under the *Jackson v. Virginia* standard, was insufficient to prove beyond a reasonable doubt that Wardell Williams either directly committed or was a principal to attempted second degree murder of Lovan Sherman.

4. The evidence admitted at the trial of this case, when viewed under the *Jackson v. Virginia* standard, was insufficient to prove beyond a reasonable doubt that Wardell Williams possessed a firearm in Rapides Parish.

5. The trial court erred in its role as gatekeeper when it permitted Michael Stelly to testify as an expert in firearm identification about the comparison of the firearm to the bullet and to the casings found at the scene.

6. The trial court erred in failing to sustain counsel's objection to the prosecution's assertions in rebuttal closing argument that the jury should not consider the responsive verdicts.

The defendant has also filed a pro se appellate brief, therein asserting as error that the trial court allowed the admission of other crimes evidence, which was inflammatory and without a proper foundation.

2

**Discussion**

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, all criminal appeals are reviewed for errors patent on the face of the record. We find no errors patent requiring action by this court.

*Sufficiency of the Evidence*

The majority of the defendant's counseled assignments of error concern the sufficiency of the evidence. In *State v. Bryant*, 12-233 (La. 10/16/12), 101 So.3d 429, the Louisiana supreme court addressed the sufficiency of the evidence claims, reiterating that the appellate review of such claims is controlled by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). *See State v. Captville*, 448 So.2d 676 (La.1984). In applying the *Jackson v. Virginia* standard, the appellate court must determine that, when viewed in the light most favorable to the prosecution, the evidence is "sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." *Bryant*, 101 So.3d at 432. *See also* La.Code Crim.P. art. 821.

In *State v. Spears*, 05-964, p. 3 (La. 4/4/06), 929 So.2d 1219, 1222-23, the supreme court stated that:

> constitutional law does not require the reviewing court to determine whether it believes the witnesses or whether it believes that the evidence establishes guilt beyond a reasonable doubt. *State v. Mussall*, 523 So.2d 1305, 1309 (La.1988). Rather, the fact finder is given much discretion in determinations of credibility and evidence, and the reviewing court will only impinge on this discretion to the extent necessary to guarantee the fundamental protection of due process of law.

"Evidence may be either direct or circumstantial." *State v. Jacobs*, 07-887, p. 12 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 551, *writ denied*, 11-1753 (La. 2/10/12), 80 So.3d 468, *cert. denied*, __ U.S. __, 133 S.Ct. 139 (2012). We note that, whether the conviction is based on direct evidence or solely on circumstantial evidence, the review is the same under the *Jackson v. Virginia* standard. *State v. Williams*, 33,881 (La.App. 2 Cir. 9/27/00), 768 So.2d 728 (citing *State v. Sutton*, 436 So.2d 471 (La.1983)), *writ denied*, 00-99 (La. 10/5/01), 798 So.2d 963. Circumstantial evidence is that where the main fact can be inferred, using reason and common experience, from proof of collateral facts and circumstances. *Id.* Where the conviction is based on circumstantial evidence, in order to convict, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438.

In *State v. Chism*, 436 So.2d 464, 469 (La.1983) (citations omitted), the supreme court discussed the use of circumstantial evidence, stating:

> Circumstantial evidence involves, in addition to the assertion of witnesses as to what they have observed, a process of reasoning, or inference by which a conclusion is drawn. Like all other evidence, it may be strong or weak; it may be so unconvincing as to be quite worthless, or it may be irresistible and overwhelming. There is still no man who would not accept dog tracks in the mud against the sworn testimony of a hundred eye-witnesses that no dog passed by. The gist of circumstantial evidence, and the key to it, is the inference, or process of reasoning by which the conclusion is reached. This must be based on the evidence given, together with a sufficient background of human experience to justify the conclusion.
>
> Consequently, before a trier of fact can decide the ultimate question of whether a reasonable hypothesis of innocence exists in a criminal case based crucially on circumstantial evidence, a number of preliminary findings must be made. In addition to assessing the circumstantial evidence in light of the direct evidence, and vice versa, the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing

4

inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence.

Here, the defendant was charged with attempted second-degree murder, violations of La.R.S. 14:27 and La.R.S. 14:30.1, and possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. As relevant herein, La.R.S. 14:30.1 states that "[s]econd degree murder is the killing of a human being: (1) [w]hen the offender has a specific intent to kill or to inflict great bodily harm[.]" Louisiana Revised Statutes 14:27 addresses "attempt," stating that:

> Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

Further, the crime of possession of a firearm by a convicted felon is set out in La.R.S. 14:95.1, which states, in relevant part, that "[i]t is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony . . . to possess a firearm or carry a concealed weapon." However, La.R.S. 14:95.1 "shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence." La.R.S. 14:95.1(C).

Here, the State offered the testimony of several witnesses, including both factual testimony and expert testimony. Some of the witnesses, including the victims, Carmilla Peterson, Ernest Sherman, and Lovan Sherman, III, testified that they had attended a wedding reception earlier in the evening and decided to

continue on to Club Platinum.[1]  One of the members of their group was Tim'Myra Daniels.[2]  According to Ms. Peterson and Lovan Sherman, a man repeatedly asked Ms. Daniels to dance, and Ms. Daniels repeatedly refused.  Lovan Sherman testified that he eventually asked the man to leave Ms. Daniels alone.  Although Ms. Daniels could not identify the man, Ms. Peterson and Lovan Sherman both identified the defendant as the person who asked Ms. Daniels to dance.  Ms. Peterson also testified that there was a shorter, dark-skinned, and angry-looking man whom she had seen speaking with the defendant earlier.  According to Ms. Peterson, the shorter man made her nervous, and he attempted to put a cigarette out on her brother's forehead.

Ms. Peterson and Lovan Sherman testified that shots were fired some ten to twenty minutes after Lovan Sherman asked the defendant to leave Ms. Daniels alone.  None of the witnesses testified that they saw the shooter.  However, Roderick Hall, one of the bouncers at the club, testified that he saw the defendant, who he identified as "Blake"[3] or "Maleke," running out of the side door to the club, "stuffing something in his pants."

Ms. Peterson testified that she was struck by a bullet in the middle of her lower-mid back.  Lovan Sherman testified that one bullet passed through his arm, one went across his stomach, and another bullet is still in his hip.  Ernest Sherman testified that he was shot in the thigh.  All three victims were treated for their injuries.  The bullet lodged in Ms. Peterson's back was later removed and sent to

---

[1] We note that several of the witnesses refer to the nightclub as the "Platinum Club."

[2] In her testimony, Ms. Daniels stated that her last name was "Daniel."  We use the spelling contained in the parties' briefs.

[3] Other witnesses, such as Courtney Carter, referred to the defendant as "Buddy" or "Maleke."

the crime lab for processing. Further, the State presented testimony that three Tul brand .380 fired cartridge casings were recovered from the nightclub.

The defendant's ex-girlfriend, Alea Duell, testified that the defendant told her that he was the gunman. According to Ms. Duell's testimony, the defendant told her that he was an "assassin" and that he shot "that dude at the club" "because he disrespected me. I wanted him dead." Ms. Duell also testified that she had seen the defendant with a black gun on the Friday before the shooting. Ms. Duell's friend, Shawndreaka King, also testified. Ms. King indicated that, unknown to the defendant, she listened in on a three-way call with Ms. Duell and the defendant. Ms. King testified that, during that phone call, she heard the defendant confess to the shooting at the club. According to Ms. King, the defendant mentioned a young lady with whom he wanted to dance but who refused his attentions. Additionally, Ms. Duell knew that the defendant was leaving for New Orleans on the Monday after the shooting. There was testimony that the defendant quit his job, where he had been working for less than one month, on Monday, October 25, 2010, and did not pick up all of his wages.

Further, the State presented evidence concerning an incident which occurred in Jefferson Parish, Louisiana, on October 29, 2010. Trooper Brian St. Clair, with the Louisiana State Police, testified that in the early morning hours of that day, he was operating a checkpoint in Jefferson Parish. When a blue 1996 Chevrolet Lumina failed to stop at the checkpoint, Trooper St. Clair pursued the vehicle. Trooper St. Clair identified two streets where the pursuit occurred—Elizabeth Street and Sanford Drive. The driver of the Lumina eventually escaped on foot. However, Trooper St. Clair testified that he apprehended the passenger, Derrick Garner. Mr. Garner also testified, stating that he was hitchhiking and did not know

the person who picked him up but denied that it was the defendant. Mr. Garner also testified that he did not have any guns in the car with him.

Bridget Payne testified that in October of 2010, she was dating the defendant's brother, who was then incarcerated. Further, at that time, she lived in Kenner, Louisiana and owned a blue Chevrolet Lumina. According to Ms. Payne, the defendant asked to borrow her car and she let him do so. Several days later, she was contacted by a state trooper who asked if she had been driving the car the night before. Ms. Payne testified that she informed the trooper that the defendant had been in possession of the car the night before.

Deputies with the Jefferson Parish Sheriff's Office testified that, shortly after daybreak on October 29, 2010, they received two phone calls about found guns, one in the intersection of Elizabeth and Quincy and the other on Sanford. A deputy retrieved a .380 Bersa pistol and a 9mm Ruger pistol from those locations. According to Michael Stelly with the North Louisiana Criminalistics Laboratory, the .380 Bersa was loaded with Tul brand ammunition. Mr. Stelly noted that the fired cartridge casings recovered at the crime scene were .380 Tul brand ammunition and testified that, especially at that time, Tul brand ammunition was not common in the United States. Additionally, Mr. Stelly testified that the bullet recovered from Ms. Peterson had insufficient identifying characteristics to make a match with the .380 Bersa. However, according to Mr. Stelly, he was able to conclude that the .380 fired Tul brand cartridge casings recovered from the nightclub were fired from the .380 Bersa pistol recovered in Jefferson Parish.

The defendant contends that the evidence points to someone else as the shooter and that there is insufficient evidence that he was in possession of a firearm. The defendant points to Mr. Hall, the bouncer at Club Platinum, and the

8

shorter, dark-skinned, angry-looking man identified by Ms. Peterson as alternative possibilities. He also points to the testimony of Rhoda Blake, the head bartender at Club Platinum, that Mr. Hall had a gun on the night of the shooting. According to Ms. Blake, she took a gun from Mr. Hall and put it in her purse. However, she stated that approximately fifteen to twenty minutes before the shooting, Mr. Hall took the gun out of her purse. The defendant also notes Mr. Hall's lengthy criminal record, including several "serious" pending charges. He also points to Ms. Peterson's testimony about the angry-looking man who attempted to stub out a cigarette on Ms. Peterson's brother's head. He also notes that several defense witnesses testified that the defendant was with them in the club at the time of the shooting, that they saw him run out of the club, and that they did not see him with a gun. Finally, he argues that Ms. Duell's testimony is unreliable because their relationship was ending and she was upset with him.

The defendant also argues that the State was unable to definitively link the defendant to the guns located in Jefferson Parish, *i.e.*, Mr. Garner denied that the defendant was the driver of the 1996 Chevy Lumina, that the DNA analyst was unable to find DNA or fingerprints which would link him to the guns found in Jefferson Parish, and that the firearms analyst was unable to link the bullet removed from Ms. Peterson to the .380 Bersa recovered in Jefferson Parish. The defendant also questions the reliability of the conclusion that the .380 cartridge casings found at the nightclub were fired from the recovered .380 Bersa.

However, having reviewed the evidence in the light most favorable to the prosecution, we find it is sufficient such that a reasonable finder of fact could conclude that that all of the elements of the crime had been proven beyond a reasonable doubt. With regard to the charges for attempted second degree murder,

9

the State had to establish that the defendant had specific intent to kill a human being and committed an act in furtherance of that purpose. *State in the Interest of L.H.*, 94-903 (La.App. 3 Cir. 2/15/95), 650 So.2d 433. Firing into a crowd is sufficient to establish specific intent to kill. *Id.* We find that the State presented evidence that, if credited by the jury, is sufficient to establish those elements.

The State presented evidence that, if accepted by the jury, the defendant was present in Club Platinum at the time of the shooting, that he had been seen with a gun less than forty-eight hours before the shooting, that there was an incident involving the defendant and the victims, and that the defendant was seen leaving the club "stuffing something in his pants." The evidence was that the nightclub was crowded when shots were fired and that Ms. Peterson, Ernest Sherman, and Lovan Sherman were actually struck by the bullets. Further, Ms. Duell and Ms. King testified that the defendant confessed to the crime.

Finally, the State also presented sufficient evidence that, if credited by the jury, would lead to a conclusion that the defendant fled Alexandria after the shooting and went to New Orleans, where he borrowed Ms. Payne's car. Further, reasonable inferences from the circumstantial evidence offered by the State are sufficient that a reasonable juror could conclude that, while still driving the borrowed car, the defendant failed to stop at a checkpoint in Jefferson Parish, lead the police on a chase and ultimately evaded capture by fleeing on foot. The location of the recovered guns along the chase route are sufficient to connect them to the defendant, and the testimony concerning the unusual ammunition and firing pin markings are sufficient to connect the .380 Bersa to the shooting at Club

Platinum.[4] *See Chism*, 436 So.2d 464.

With regard to the charge of possession by a firearm by a convicted felon, the State had to prove that the defendant had been convicted of a crime of violence as enumerated in La.R.S. 14:2(B) and that he possessed a firearm within ten years from the date of completion of sentence. The defendant stipulated to his 2007 conviction for second-degree battery, which is less than ten years from the commission of the crime. Second-degree battery is listed as a "crime of violence" in La.R.S. 14:2(B). As previously discussed, the evidence presented by the State is sufficient to support a conclusion that the defendant possessed a firearm while in Rapides Parish.

Accordingly, we find that the State presented sufficient evidence to satisfy the *Jackson v. Virginia* standard with regard to the defendant's conviction for three counts of attempted second-degree murder and with regard to his conviction for one count of possession of a firearm by a convicted felon.

*Evidentiary Issues*

The defendant also asserts that the trial court made several evidentiary errors. In his counseled brief, the defendant argues that the trial court erred in permitting Mr. Stelly to testify as an expert with regard to firearms identification. The defendant's pro se assignments of error concern the admission of evidence of the defendant's prior conviction.

"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." La.Code Crim.P. art. 841(A). With regard to the defendant's allegation that the trial court erred in permitting Mr. Stelly to

---

[4] We observe that, even if the jury found that the defendant was not driving the Lumina in the early morning hours of October 29, 2010, there is sufficient evidence to connect the defendant to the guns recovered from the chase route.

testify as an expert with regard to firearms identification, we find that the record indicates that the defendant failed to preserve this issue for appellate review, because he did not adequately bring this issue to the trial court's attention. The record indicates that the defendant filed a motion in limine concerning whether firearms identification satisfies the *Daubert* standard. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993). The motion in limine addressed, in part, a 2010 report by the National Academy of Sciences that questioned the reliability of firearms identification. According to the record, the motion in limine was filed in open court on August 14, 2012, *i.e.*, the same day that Mr. Stelly testified. Our review of the transcript and the minutes does not reveal that there was any on-the-record discussion of that motion, nor is there any argument or any ruling on the motion contained within the record.

However, we observe defense counsel briefly questioned Mr. Stelly about the report during cross-examination about Mr. Stelly's qualifications. The record reflects that defense counsel attempted to question Mr. Stelly about error rates and points of identification, but the trial court sustained the State's objection on the basis that the defense's questions were not germane to whether Mr. Stelly was qualified to testify as an expert. The trial court observed that the weight of Mr. Stelly's opinion was left to the jury. Defense counsel stated that he "was just trying to gauge his expertise in this area so the [trial court] can make an informed decision on that." Thus, the record indicates that the defendant objected on the basis of Mr. Stelly's qualifications, not the substance of his testimony. However, even assuming that this was sufficient to preserve the issue for appellate review, we find no error in the trial court's acceptance of Mr. Stelly as an expert witness.

A witness qualified as an expert by knowledge, skill, experience, training, or education may offer an opinion as to scientific, technical, or other expert testimony if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." La.Code Evid. art. 702. In *State v. Allen*, 41,548, pp. 11-13 (La.App. 2 Cir. 11/15/06), 942 So.2d 1244, 1254-55, *writ denied*, 07-530 (La. 12/7/07), 969 So.2d 619, the second circuit addressed the admissibility and review of expert testimony, stating:

> In *State v. Foret*, 628 So.2d 1116 (La.1993), the Louisiana Supreme Court adopted the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), regarding proper standards for the admissibility of expert testimony which requires the trial court to act in a gatekeeping function to ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *State v. Chauvin*, 02-1188 (La. 5/20/03), 846 So.2d 697. To assist the trial courts in their preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can properly be applied to the facts at issue, the Supreme Court suggested the following general observations are appropriate: 1) whether the theory or technique can be and has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the methodology is generally accepted by the relevant scientific community. *Daubert*, 509 U.S. at 592-594, 113 S.Ct. 2786. In *Foret*, *supra*, the court adopted these observations as a helpful guide for our lower courts in considering this difficult issue. *Id*. Thus, Louisiana has adopted *Daubert's* requirement that in order for technical or scientific expert testimony to be admissible under La. C.E. Art. 702, the scientific evidence must rise to a threshold level of reliability . . . . The trial court may consider one or more of the four *Daubert* factors, but that list of factors neither necessarily nor exclusively applies to all experts or in every case. *Id*. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determinations. *Kumho* [*Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999)].
>
> A trial court has great discretion in determining the competence of an expert witness, and that determination will not be overturned absent an abuse of discretion. La. C.E. art. 702; *State v. Gipson*, 37,132 (La.App.2d Cir. 6/25/03), 850 So.2d 973, *writ denied*, 03-2238 (La. 1/30/04), 865 So.2d 75. The test of competency of an expert is his knowledge of the subject about which he is called upon to express

an opinion. A combination of specialized training, work experience, and practical application of the expert's knowledge can combine to demonstrate that a person is an expert. *State v. Gipson*, *supra*.

Here, the record indicates that Mr. Stelly testified about his education and experience. Notably, at the time of trial, Mr. Stelly had been working for the North Louisiana Criminalistics Laboratory since 1993, and he had been qualified as an expert approximately 100 times in the field of firearms identification. He also testified that, in addition to a bachelor's degree in toxicology, he did twenty months of training when he was hired by the crime lab. The defense attorney questioned Mr. Stelly about the National Academy of Sciences report. Mr. Stelly testified that he has testified about a dozen times since the publication of the report and has been questioned about it on a majority of those occasions. Mr. Stelly also demonstrated that he was familiar with the published error rates for firearms and toolmark identification. We additionally note that, on direct and cross-examination, Mr. Stelly testified as to the science of firearms identification and its methodology, and how he applied it to the tested items in this case. Further, the defendant subjected Mr. Stelly to stringent cross-examination concerning the reliability of that testimony, including Mr. Stelly's documentation protocol and whether he had accounted for weapons that may have similar manufacturing marks to the weapon tested herein.

Based on the record, we find that the trial court did not abuse its discretion in allowing Mr. Stelly to testify as an expert. *See Jacobs*, 67 So.3d 535; *State v. Williams*, 42,914 (La.App. 2 Cir. 1/9/08), 974 So.2d 157, *writ denied*, 08-465 (La. 9/26/08), 992 So.2d 983. Accordingly, the defendant's arguments in this regard are without merit.

With regard to the defendant's pro se assignments of error, both of which concern the admission of the defendant's prior conviction for second degree battery, we find that this issue is not sufficiently preserved for appellate review. *See* La.Code Crim.P. art. 841. A review of the record indicates that the defendant made no objections when the State introduced evidence during its case in chief concerning his prior conviction. Further, the defendant refers to several pages in the record. Those pages contain a portion of the State's closing argument, and do not contain any references to the defendant's prior conviction. We observe that the State referred to the defendant's status as a convicted felon at the end of its closing argument, but the defendant made no objection to that reference.

Even assuming the issue was preserved for appellate review, the record indicates that the defendant was charged with possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1. The fact of his prior felony conviction was an essential element of that crime, and was admissible for that purpose. *See State v. Ronquille*, 09-231 (La.App. 5 Cir. 11/24/09), 26 So.3d 823, *writ denied*, 10-525 (La. 2/25/11), 58 So.3d 455. The record indicates that the defendant stipulated to his conviction for second degree battery in 2007. Additionally, in charging the jury, the trial court emphasized that the fact of the defendant's prior conviction was introduced as evidence for the charge of possession of a firearm by a convicted felon and that the jury "may not find [the defendant] guilty of these charges merely because he's previously been convicted of a crime."

The defendant's arguments in this regard are without merit.

*State's Reference to Responsive Verdicts*

The defendant also contends that the State improperly instructed the jury not to consider responsive verdicts and that the trial court should have sustained the defendant's objection to that reference. During closing arguments, the State addressed the responsive verdicts of attempted manslaughter, aggravated battery, and attempted possession of a firearm by a convicted felon. The State then stated that the defendant "doesn't deserve consideration of these responsive verdicts; these lesser and included verdicts. He doesn't deserve it. He would go into a bar because he's upset at a young lady for not dancing with him, and fire off shots[.]" The defendant objected on the grounds that the jury is required to consider responsive verdicts but was overruled by the trial court.

The defendant argues that this statement was beyond the scope of closing argument and was inflammatory. The defendant believes that a mistrial was warranted, or, at minimum, an admonition from the trial court instructing the jury to ignore the State's comment. The State contends that the comment was merely an attempt "to explain to the jury [that] the State had proven beyond a reasonable doubt each essential element of the crime[.]" The State also argues that any error was harmless.

Louisiana Code of Criminal Procedure Article 774 addresses the scope of argument and states that "argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The argument shall not appeal to prejudice." Prosecutors are granted wide latitude in their closing argument tactics, and the trial court has broad discretion in controlling the scope of that argument. *State v. Frank*, 99-553 (La. 5/22/07), 957 So.2d 724. Further, an appellate court

16

will not reverse a conviction where the prosecutor exceeds the bounds of closing argument unless convinced that the argument influenced the jury and contributed to the verdict. *Id.*

Here, even assuming that the State's argument was improper, we find that the record does not support a conclusion that the argument influenced the jury and contributed to the verdict. As previously discussed, the evidence presented by the State was sufficient to support the defendant's convictions. Further, the defendant's argument to the jury was that he was not the shooter, not that he was guilty of a lesser included offense. Finally, we note that the jury submitted a question to the trial court concerning the lesser included offenses.

Accordingly, we find no merit to the defendant's argument in this regard.

## DECREE

The convictions of the defendant, Wardell Christopher Williams, for three counts of attempted second degree murder and one count of possession of a firearm by a convicted felon are affirmed.

**AFFIRMED.**