# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-199

**STATE OF LOUISIANA**

**VERSUS**

**BRAYLEN MARQUEZ LEDAY**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 10157-22
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**WILBUR L. STILES**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Gary J. Ortego, Ledricka J. Thierry, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

**Edward K. Bauman**
**LA Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Braylen Marquez LeDay**

**Hon. Stephen C. Dwight**
**District Attorney, Fourteenth Judicial District**
**Karen C. McClellan**
**Assistant District Attorney**
**John E. Turner**
**Assistant District Attorney**
**901 Lakeshore Drive, Suite 800**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**STILES, Judge.**

A unanimous jury found Defendant, Braylen Marquez LeDay, guilty on March 3, 2023, of first degree rape. On April 28, 2023, the trial court sentenced Defendant to life in prison, without benefit of probation, parole, or suspension of sentence. Defendant has appealed his conviction. We affirm Defendant's conviction and sentence.

## PROCEDURAL HISTORY

On July 21, 2022, a grand jury indicted Defendant with one count of first degree rape, a violation of La.R.S. 14:42. The victim, J.A., was eleven years old at the time.[1] On August 24, 2022, Defendant pled not guilty and not guilty by reason of insanity.[2]

Defendant's trial began on February 28, 2023, and ended on March 3, 2023, with the jury unanimously finding him guilty of the first degree rape of J.A.

On April 26, 2023, the trial court held a hearing regarding Defendant's motion for new trial. The court not only denied Defendant's motion, but also, per the State's request, revoked Defendant's probation on an unrelated prior conviction of obscenity.

On April 28, 2023, the trial court sentenced Defendant to life in prison at hard labor, without benefit of probation, parole, or suspension of sentence. Defendant filed a motion to reconsider sentence on May 31, 2023, without requesting a contradictory hearing. That same day, the trial court denied the motion on the merits.

---

[1] The initials of the victim are used to protect her identity as per La.R.S. 46:1844(W).

[2] The minutes show that Defendant pled not guilty and not guilty by reason of mental defect. However, this was a clerical error. According to the transcript of his August 24, 2022 plea, Defendant pled not guilty and not guilty by reason of insanity. The trial court corrected this error at the beginning of his trial.

Defendant timely filed the instant appeal on June 18, 2024, asserting one assignment of error:

> The evidence presented at trial, when viewed in the light most favorable to the prosecution, was insufficient to prove Braylen Leday guilty of first degree rape beyond a reasonable doubt.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. After reviewing the record, we find there are no errors patent.

## ASSIGNMENT OF ERROR

In his sole assignment of error, Defendant contends that the evidence presented at trial by the State was insufficient to prove beyond a reasonable doubt all of the elements of the crime of first degree rape. Defendant has given several reasons why he believes the State provided insufficient evidence. First, although the jury was presented with his confession, the State presented no direct or circumstantial evidence connecting him to any crime. Second, Defendant notes that neither he nor the victim testified at trial. Third, Defendant claims that although male DNA was found in the victim's vagina one or two days after the alleged incident, the source of the DNA was never discovered since authorities failed to take a reference sample from Defendant. Fourth, Defendant notes that although Detective Melanie Veillon testified that she met with the victim, the report containing the information she gained from that interview was not entered into evidence. And lastly, Defendant argues that his confession alone should not be sufficient to convict him.

2

***Relevant Law***

The analysis for insufficient-evidence claims is well settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

This court has further stated the following regarding appellate review in cases

relying on circumstantial evidence:

> When the conviction is based upon circumstantial evidence, La.R.S. 15:438 provides that the state "must exclude every reasonable hypothesis of innocence" in order to convict. *State v. Camp*, 446 So.2d 1207, 1209 (La.1984). "Circumstantial evidence consists of proof of collateral facts and circumstances from which elemental factors may be inferred according to reason, experience and common sense." *State v. Burns*, 441 So.2d 843, 845 (La.App. 3 Cir.1983). However, La.R.S. 15:438 does not establish a stricter standard of review on appeal than the rational juror's reasonable doubt standard. The statute serves as a guide for the jury when considering circumstantial evidence. On appeal, the issue is whether a rational trier of fact, when viewing the evidence in a light most favorable to the prosecution, could find that all reasonable hypotheses of innocence were excluded. *State v. Williams*, 13-497 (La.App. 3 Cir. 11/6/13), 124 So.3d 1236, *writ denied*, 13-2774 (La. 5/16/14), 139 So.3d 1024.

*State v. Baumberger*, 15-1056, pp. 10-11 (La.App. 3 Cir. 6/1/16), 200 So.3d 817,

826-27, *writ denied*, 16-1251 (La. 5/26/17), 221 So.3d 859, *cert. denied*, 583 U.S.

950, 138 S.Ct. 392 (2017).

First degree rape is defined in La.R.S. 14:42, which provides, in pertinent part:

> A. First degree rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> . . . .
>
> (4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

### *Evidence Presented at Defendant's Trial*

Riikeja Anderson, the victim's mother, testified at trial that she considered Defendant her boyfriend and that they had discussed getting married. He would spend the night at her home several nights a week, but although he slept in her bed, the two were never intimate with one another. Sometimes when Ms. Anderson had to work late, Defendant would "grab a pizza" or pick her two daughters up from school. Her daughter J.A., the victim, was eleven years old at this time and her younger daughter was nine years old.

Ms. Anderson testified that on April 1, 2022, she came home to find Defendant sleeping in her daughters' room. Seeing two distinct shapes under the covers in J.A.'s bed, Ms. Anderson pulled out her phone and took a picture. She then pulled back the blankets, saw Defendant in bed with J.A., and took another picture. These two pictures were introduced into evidence at trial and presented to the jury. They show Defendant and J.A. in bed, hugging. Ms. Anderson testified that once she woke up Defendant, she demanded an explanation from him. He told her that he must have been sleepwalking and thought he was in Ms. Anderson's room.

The next day, April 2, 2022, Ms. Anderson allowed Defendant to take her daughters to his family's get-together while she was at work. Before allowing them to go, Ms. Anderson called Defendant's aunt and confirmed that other children

would be there. However, during her shift, Defendant's aunt appeared at her job. His aunt told her that she needed to leave work immediately and go check on her children. Ms. Anderson called the Calcasieu Sheriff's Department and asked them to meet her at her home.

Ms. Anderson testified that, upon entering her home, she heard water running, coming from separate bathrooms. She saw a pile of clothes on the floor, leading her to believe that Defendant had either engaged in sexual intercourse with J.A. or was about to do so. When Ms. Anderson confronted Defendant, he fled the house. J.A. also ran away and did not return for several hours.

On April 3, 2022, Defendant checked himself into the emergency room at Christus St. Patrick's Hospital, asking to be tested for the STD chlamydia and claiming to have heard voices. Sommer Rachal, an emergency room psychiatric nurse working there at the time, performed his psychiatric assessment. Ms. Rachal testified that when she interviewed Defendant, he told her he had been doing things with an eleven-year-old girl. When questioned about his claim that he was hearing voices, Defendant told Ms. Rachal that he was hearing voices at the time of the incident with the girl; however, he was not hearing them as he was being assessed. Ms. Rachal testified that Defendant denied any mental health history, past diagnosis, or admissions into in-patient mental health facilities. He also had never seen a mental health provider. Ms. Rachal further testified that Defendant exhibited no symptoms or signs of psychosis.

Based on Defendant's report about his relations with an eleven-year-old girl, Ms. Rachal called the police. The Lake Charles Police Department sent Corporal Raymond Ford. Corporal Ford testified that he interviewed Defendant at the hospital, which was recorded on his body cam. The footage of the interview was played for

the jury. During the conversation with Corporal Ford, Defendant initially denied any type of sexual contact with the victim other than kissing. However, he eventually admitted that the two had sexual relations recently.

With Defendant's permission, Corporal Ford took possession of his iPhone. The phone was given to Deputy Jared Abshire, a digital forensics investigator at the Calcasieu Parish Sheriff's Department. Deputy Abshire examined the phone's contents and generated an extraction report. At trial, the State had Deputy Abshire read before the jury the search tags from his report. There were seventy-two searches found on Defendant's phone which the State considered to be relevant. The following are a few examples of those searches tagged by the State:

> Tag 1: "So I've been having sex with an eleven-year-old girl and her mom trying [sic] to take her to doctor [sic], but I don't want her to find out."

> Tag 2: "I been [sic] fucking my girlfriend, but I don't want her mom to bring her to the doctor and find out I've been doing it with her."

> Tag 4: "My girlfriend is eleven years old and we've been having sex and her mom taking [sic] her to the doctor to check her out, but I don't want her mom to find out. What can I do?"

> Tag 16: "What age do females become sexually active?"

> Tag 35: "If a man nuts an 11-year-old girl, what would happen?"

> Tag 47: "Does lab work show if someone's having sex with daughter [sic] unprotected?"

> Tag 56: "Can chlamydia cause stomach pain?"

Jennifer Moody also testified at Defendant's trial. She is a registered nurse working at Lake Charles Memorial Hospital, as well as a trained Sexual Assault Nurse Examiner (SANE). Ms. Moody testified that during her examination of J.A., she noticed some marks, scratches, and bruising, but did not specify their exact location. More significant, however, was the positive alternative light source image

that she located at the victim's vaginal opening. Ms. Moody testified that this image signified the existence of biological specimens. After swabbing the area, Ms. Moody sent the swab to the police.

Kelsey Alexander, a DNA analyst for the Southwest Crime Lab, received the swab taken by Ms. Moody. Ms. Alexander testified that she obtained one DNA profile from the swab, which matched the victim's profile. When asked by the State whether she found any other DNA profiles, Ms. Alexander responded that she did not find another one. However, she explained that there was an additional step in their analysis which quantifies the amount of DNA in a sample. As a result of this additional step, the sample taken from the victim exhibited male DNA. Whether this male DNA belonged to Defendant, however, remained undetermined as the lab did not perform that kind of testing. Thus, the conclusion of the lab was that, along with the victim's DNA, there was some male DNA present on the swab taken from the victim's vaginal area.

Melanie Veillon is a detective with the Calcasieu Parish Sheriff's Department assigned to the unit that investigates sex offenses and cruelty to juveniles. Detective Veillon interviewed Defendant after he was arrested and placed in custody. The recording of that interview was played for the jury. We have also reviewed that video and note that Defendant again confesses to having vaginal sex with J.A. the day Ms. Anderson came home and found them showering in different bathrooms. He also confessed that he had oral sex with J.A. multiple times.

*Discussion*

In *State v. Cruz*, 455 So.2d 1351, 1355 (La.1984) (citations omitted), the Louisiana supreme court noted that "[i]t is well settled that an accused party cannot be legally convicted on his own uncorroborated confession without proof that a

7

crime had been committed by someone;" that is, without direct or circumstantial evidence.

Here, Defendant essentially argues that the prosecution did not present enough direct or circumstantial evidence for the jury to corroborate his confession to having sexual relations with an eleven-year-old girl. Noting the evidence given above, we find that the State gave the jury enough evidence to decide whether Defendant did what he confessed to.

Additionally, regarding Defendant's argument that his confession was given after he had been hearing voices, as well as the fact that he pled not guilty by reason of insanity, we note La.Code Crim.P. art. 652, which provides, "The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence." Defendant provided no evidence supporting his defense of insanity. Consequently, the jury had no reason to doubt the validity of his own statements confessing to having sex with J.A.

Thus, considering all of the evidence noted above, we find that the evidence presented by the prosecution at trial was sufficient for the jury to find Defendant guilty beyond a reasonable doubt of first degree rape.

### DECREE

For the foregoing reasons, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**