# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-1135

**STATE OF LOUISIANA**

**VERSUS**

**AARON ORLANDO RICHARDS**

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 130590
HONORABLE DAVID MICHAEL SMITH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

## SYLVIA R. COOKS
## JUDGE
\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and John E. Conery, Judges.

**AFFIRMED.**

**Keith Stutes, District Attorney**
**Cynthia Simon, Assistant District Attorney**
**P.O. Box 3306**
**Lafayette, LA 70502**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Edward K. Bauman**
**Louisiana Appellate Project**
**P.O. Box 1641**
**Lake Charles, LA 70602**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Aaron Orlando Richards**

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

On March 29, 2010, in the late evening, Defendant, Aaron Orlando Richards, and co-defendant, Marcus Feast, followed Timothy Falgout to a home where he was delivering a pizza. Defendant stabbed the victim five times during the course of a robbery. The victim died as a result of the stab wounds.

On October 27, 2010, Defendant was indicted for the first degree murder of Timothy Falgout, in violation of La.R.S. 14:30. At the same time, Defendant was indicted for attempted first degree murder, violations of La.R.S. 14:27 and 14:30, and purse-snatching, a violation of La.R.S. 14:65.1. The latter two charges were severed from the first degree murder charge on April 30, 2012.

On December 8, 2010, Defendant filed a "Jackson Demand for Notice of Any Bad Acts That the State May Wish to Use at Either Phase." On January 12, 2012, the State filed a "State's Notice with Regard to Aggravating Circumstances" and "State's Response to Defendant's Jackson Demand for Notice of Any Bad Acts That the State May Wish to Use at Either Phase" and on March 28, 2012, the State filed an amended response.

The issue of the La.Code Evid. art. 404(B) other crimes evidence was taken up on May 30, 2012. Following testimony and arguments, the trial court took the matter under advisement. On July 9, 2012, the trial court ruled that the evidence the State sought to admit at trial was relevant and admissible. The trial court's ruling was affirmed. *State v. Richards*, 12-1063 (La.App. 3 Cir. 12/17/12) (unpublished opinion), *writ denied*, 13-152 (La. 3/1/13), 108 So.3d 1183.

On July 18, 2016, the State filed a "Notice of Intent Not to Seek the Death Penalty." A jury trial commenced on April 4, 2017, following which Defendant was found guilty as charged. Defendant was sentenced to life imprisonment

2

without the benefit of parole, probation, or suspension of sentence, to be served consecutively with any other sentence Defendant was currently serving.

Defendant has perfected this timely appeal, wherein he asserts four assignments of error: (1) The trial court erred in allowing the introduction of other crimes evidence; (2) The trial court erred in failing to grant defense counsel's challenges for cause and in granting a state's challenge for cause; (3) The trial court erred in releasing a potential juror for cause on its own; and (4) The evidence submitted at trial was insufficient to find Defendant guilty of first degree murder beyond a reasonable doubt.

For the following reasons, we find no merit in any of Defendant's assignments of error and affirm his conviction and sentence.

## I. *Assignment of Error Number Four.*

Defendant's fourth assignment of error asserts there was insufficient evidence to support a conviction for first degree murder. We will address Defendant's fourth assignment of error first because should this claim have merit, the remaining assignments of error become moot. *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970 (1981), *State v. Hearold,* 603 So.2d 731 (La.1992).

Defendant argues there were too many errors committed during the trial to allow a verdict of guilty beyond a reasonable doubt that he committed the murder of Mr. Falgout during the course of a robbery.

In *State v. Chesson,* 03-606, p. 5 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 172, *writ denied*, 03-2913 (La. 2/13/04), 867 So.2d 686, this court stated in considering questions of sufficiency of the evidence:

> [A] reviewing court must consider the evidence presented in the light most favorable to the prosecution and consider whether a rational trier of fact could have concluded that the essential elements of the offense were proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court defers to rational credibility and evidentiary determinations of the trier of fact. *State v. Marcantel*, 00-1629 (La.4/3/02), 815 So.2d 50.

Additionally, in *State v. Williams*, 13-497, p. 4 (La.App. 3 Cir. 11/6/13), 124 So.3d 1236, 1240, *writ denied*, 13-2774 (La. 5/16/14), 139 So.3d 1024, this court noted:

> "Evidence may be either direct or circumstantial." *State v. Jacobs*, 07-887, p. 12 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, 551, *writ denied*, 11-1753 (La.2/10/12), 80 So.3d 468, *cert. denied*, [566 U.S. 388], 133 S.Ct. 139, 184 L.Ed.2d 67 (2012). We note that, whether the conviction is based on direct evidence or solely on circumstantial evidence, the review is the same under the *Jackson v. Virginia* standard. *State v. Williams*, 33,881 (La.App. 2 Cir. 9/27/00), 768 So.2d 728 (citing *State v. Sutton,* 436 So.2d 471 (La.1983)), *writ denied,* 00-99 (La.10/5/01), 798 So.2d 963. Circumstantial evidence is that where the main fact can be inferred, using reason and common experience, from proof of collateral facts and circumstances. *Id.* Where the conviction is based on circumstantial evidence, in order to convict, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438.

First degree murder, in pertinent part, is defined as:

A. First degree murder is the killing of a human being:

> (1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, second degree kidnapping, aggravated escape, aggravated arson, aggravated or forcible rape, aggravated burglary, armed robbery, assault by drive-by shooting, first degree robbery, second degree robbery, simple robbery, terrorism, cruelty to juveniles, or second degree cruelty to juveniles.

La.R.S. 14:30 (at the time the offense was committed).

"Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequence to follow his act or failure to act." La.R.S. 14:10(1). "Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant." *State v. Draughn*, 05-1825, pp. 7-8 (La. 1/17/07), 950 So.2d 583, 592-93, *cert. denied,* 552 U.S. 1012, 128 S.Ct. 537 (2007).

During the trial, the following testimonies and exhibits were submitted by the State and Defendant:

4

(1).  Addie Bourgeois testified that in April 2009, after arriving at Buffalo Wild Wings' parking lot in Lafayette, Louisiana, she was mugged (as she exited her vehicle) and robbed.  She stated that even before she was outside her car, a man approached her, punched her in the face, and stole her purse.  She described him as a light brown male, possibly Hispanic, wearing a green polo shirt.  While Ms. Bourgeois never identified Defendant as the assailant, Todd Borel (a detective with the Lafayette Police Department) investigated the robbery and eventually connected Defendant to the crime.

Detective Borel testified he obtained a video from Buffalo Wild Wing's surveillance camera for the evening of the robbery.  The video showed Ms. Bourgeois' vehicle pulling into the parking lot.  Another vehicle pulled in right behind her vehicle.  A man exited the second car, approached Ms. Bourgeois, struck her, and raced back to the waiting vehicle.  The detective stated the next day he learned that one of Ms. Bourgeois' credit cards was used at a Wal-Mart store approximately forty-five minutes after the robbery.  Detective Borel obtained Wal-Mart's surveillance video and identified Defendant, wearing a green polo shirt, and another man making a purchase with Ms. Bourgeois' credit card.  That same evening, the credit card was used again at a gas station in Kaplan.  A surveillance video was also obtained of one of the men using the credit card.  The gas station's store clerk identified the man using the credit card as Darvin Williams.  Mr. Williams was picked up and questioned by police.  Mr. Williams admitted that he was with Defendant the night Ms. Bourgeois was robbed.  Mr. Williams told the detective he was driving the vehicle that pulled up behind Ms. Bourgeois' vehicle and it was Defendant who assaulted and robbed Ms. Bourgeois.  Detective Borel identified Defendant in court as the man who was with Darvin Williams at Wal-Mart wearing a green polo shirt.  The detective said Defendant told him it was Mr.

Williams who hit and robbed Ms. Bourgeois and that they had switched shirts afterwards.

(2). Mary Courville testified, on March 30, 2010, at approximately 1:30 a.m., she was attacked by a man after she left a bar in Lafayette and was walking towards her vehicle. She testified the man walked up behind her, punched her in the face, and stole her purse. She reported the assault and theft to the police, but she was not able to identify the perpetrator. Detective Ben Suire, a detective with the Lafayette City Police, worked Ms. Courville's case. On April 7, 2010, he learned that Ms. Courville's credit card was used at a local Circle K approximately twenty minutes after the assault and robbery took place. Detective Suire obtained the surveillance video from the Circle K for the morning of March 30, 2010. The video showed Defendant and another man making purchases matching the purchases made on Ms. Courville's card. At the time, Detective Suire did not know who the men were. He put out a "be on the look out" for the two men. In September 2010, he received information from another law enforcement agency that one of the men was Marcus Feast, who was incarcerated at the time. The detective talked with Mr. Feast. Shortly thereafter, Mr. Feast was charged with unauthorized use of a credit card, and Defendant was charged with simple robbery of Ms. Courville.

(3). Cassie Lacomb testified, on March 29, 2010, she arrived home with her two young children around 6:30 p.m. She lived in a subdivision close to Ambassador Caffery in Lafayette at the time. She ordered a pizza to be delivered. While waiting for the pizza to arrive, she heard a vehicle turn into her driveway. She then heard a commotion but thought a car was just turning around. A little later, she decided to call Pizza Hut because it was getting late, but then she saw a car sitting in the drive, behind her car, with the door opened. When she went

6

outside, she saw a person laying on the ground, bleeding. She called 911. It was the victim, Mr. Falgout, who had been delivering her pizza.

When deputies from Lafayette Parish Sheriff's Office arrived, they found the victim deceased on Ms. Lacomb's lawn. The police were able to identify the victim from the plates on his vehicle. He had no wallet or other identification on his person, although later, the police were advised the victim always carried a wallet. A bloody knife was located near the victim's body. The knife was sent to Acadiana Criminalist Laboratory for DNA analysis. Ms. Lacomb told the police she ordered the pizza around 7:30 p.m. After talking with the manager of Pizza Hut, the police determined that Mr. Falgout would have arrived at Ms. Lacomb's house at approximately 8:30 p.m. The police backtracked the possible routes the victim could have taken to deliver the pizza from the Pizza Hut to Ms. Lacomb's house and located a house in the neighborhood that had a surveillance camera facing the roadway. When they viewed the video, they saw the victim's car drive past at the approximate time it was determined it would have arrived at Ms. Lacomb's house. They also saw a black SUV following closely behind the victim's car. Attempts to identify the SUV were unsuccessful. However, in June 2010, the police received word from Acadiana Criminalist Laboratory that two DNA matches were located through CODIS (Combined DNA Index System) from the evidence sent for analysis, one DNA match was found on the knife and one on the victim's clothing. The DNA located on the victim's clothing was from a man who lived in Alexandria, but who was deceased at the time the victim was killed. The DNA located on the knife which stabbed the victim matched Defendant.

Detective Thad Badeaux, with the Lafayette Parish Sheriff's Office, said further inquiry established, while Defendant was living in Virginia at the time, he was in Lafayette on March 29, 2010, for an April 1, 2010 court date concerning the 2009 assault and robbery of Ms. Bourgeois. Detective Badeaux then obtained a

police report, written by a Lafayette City deputy marshal, Shane Duplechin, who encountered Defendant and Marcus Feast in the early morning of March 30, 2010, in Mr. Feast's vehicle, a light gold Mercedes Benz. The marshal ran the plates on the Mercedes Benz and a background check on the occupants of the vehicle. Detective Badeaux testified, with this information they reexamined the March 30, 2010 surveillance recording of the victim's car on its way to deliver pizza to Ms. Lacomb's house and saw that shortly after the black SUV passed the surveillance camera, a light gold Mercedes Benz passed the camera. Shortly thereafter, the Mercedes Benz drove back in front of the surveillance camera, traveling at a high rate of speed on the wrong side of the street.

Detective Badeaux said he talked with Defendant on August 5, 2010, when he was in town for a court date. Defendant initially denied being with Mr. Feast on the evening of March 29, 2010. He eventually stated he was picked up by Mr. Feast in the early morning on March 30, 2010, shortly before Mr. Feast was pulled over by the city marshal. The detective stated when he told Defendant his DNA was on the knife that killed Mr. Falgout, Defendant said that was not possible and accused the police of planting the DNA. Defendant was arrested for the first degree murder of the victim. The detective took a buccal swab and sent it to Acadiana Crime Lab for comparison with the DNA found on the knife. The DNA analysis came back a positive match.

Detective Badeaux interviewed Mr. Feast on August 9, 2010, and again on August 17, 2010. During the first interview, Mr. Feast was vague about where he was on March 29 and 30, 2010. However, Mr. Feast drove the detective around town, retracing the routes he had taken on March 29 and 30, 2010. Mr. Feast told the detective he and Defendant were "scrapping," collecting metal to sell the next day. He drove through the neighborhood where Mr. Falgout was killed. At the second interview, Mr. Feast gave more information. He stated he drove Defendant

8

to the neighborhood where Mr. Falgout was killed. Mr. Feast said he dropped Defendant off per his instructions, drove around a bit, then returned and picked Defendant up. Mr. Feast testified when Defendant jumped in the car, he told Mr. Feast to "Hurry up, get out of here. I think I just killed somebody."

Marcus Feast's testimony was consistent with Detective Badeaux's testimony. Mr. Feast explained he was vague about the incident in question during the first interview because he was high on drugs the night of the murder and really did not remember Defendant. However, when he was reminded about the marshal pulling him over in the early morning of March 30, 2010, he remembered more details of the incident. At the time of trial, Mr. Feast was on parole from a fifteen-year sentence imposed on a guilty plea for his involvement in the stabbing death of Mr. Falgout.

As noted, Defendant argues the evidence was insufficient to establish guilt beyond a reasonable doubt. He argues it was error to have permitted the testimony of Ms. Bourgeois and Ms. Courville. He asserts these offenses were submitted solely to show that Defendant was a bad man. However, as noted above, Defendant sought a writ of review on the issue of the admissibility of the testimony, and this court found no error in the trial court's ruling.

Defendant also argues Mr. Feast's testimony was not credible. He contends Mr. Feast lied initially when he denied Defendant was in his vehicle on the evening of the murder. He points out Mr. Feast admitted that at the time he was high on drugs on the night of the murder. However, it is well settled the fact finder's role is to weigh the credibility of witnesses. *State v. Ryan*, 07-504 (La.App. 3 Cir. 11/7/07), 969 So.2d 1268. An appellate court cannot second guess the credibility conclusions of the trier of fact but rather, should defer to the rational credibility and evidentiary determinations of the jury. *Id.* The appellate court may impinge on the fact finder's discretion and its role in determining the credibility of

9

witnesses "only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988). Furthermore, "in the absence of internal contradictions or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient to support the requisite factual conclusion." *State v. Hongo,* 625 So.2d 610, 616 (La.App. 3 Cir. 1993), *writ denied,* 93-2774 (La. 1/13/94), 631 So.2d 1163.

Defendant argues even under the standard of viewing all the evidence in a light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. However, Defendant and Mr. Feast were together in Mr. Feast's gold Mercedes Benz on the evening of the murder. Video surveillance showed Mr. Feast's vehicle following the victim's car on his way to deliver the pizza shortly before Mr. Falgout was discovered dead. Video surveillance from Circle K showed Mr. Feast and Defendant using Ms. Courville's credit card, stolen later in the evening. Deputy Marshal Duplechin testified he had pulled Mr. Feast's vehicle over at approximately 4:00 a.m. on March 30, 2010, and Defendant was in the car. Testimony established Mr. Feast drove Defendant to the site where Mr. Falgout was killed and then picked him up a few minutes later. Mr. Feast stated Defendant said he may have just killed a man. Additionally, Mr. Falgout's wallet was missing, seemingly cut out of his pocket, to be discovered a few days later tossed into some bushes. Finally, considering the only DNA found on the knife that killed Mr. Falgout was Mr. Falgout's and Defendant's, we find there was sufficient evidence for the jury to find, while Defendant was robbing Mr. Falgout, he intentionally stabbed him several times, which resulted in his death. As noted above, specific intent can be inferred from the circumstances surrounding the offense. Stabbing a person five times, three times in the chest, indicates specific

intent to kill or inflict serious bodily harm. *See State v. Dooley*, 38,763, 38,764 (La.App. 2 Cir. 9/22/04), 882 So.2d 731 *writ denied,* 04-2645 (La. 2/18/05), 896 So.2d 30.

Accordingly, when viewed in a light most favorable to the State, the evidence was sufficient to convict Defendant of first degree murder beyond a reasonable doubt.

## II.    *Assignment of Error Number One.*

Defendant objected at trial to Ms. Courville's and Ms. Bourgeois' testimonies regarding the assaults and robberies. Defendant argues the evidence of the other crimes was submitted by the State in "an attempt to show the jury that the defendant is a man of bad character [and] [t]he evidence at issue was improperly admitted, and it clearly prejudiced Aaron by depicting him as a 'bad man.'"

In *State v. Garcia*, 09-1578, pp. 53-54 (La. 11/16/12), 108 So.3d 1, 38, *cert. denied*, 570 U.S. 926, 133 S.Ct. 2863 (2013), the supreme court addressed, in detail, the proper use and admissibility of other crimes evidence, explaining:

> The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is, and has been, such evidence is not admissible to prove the accused committed the charged crime because he has committed other such crimes in the past or to show the probability he committed the crime in question because he is a man of criminal character. *State v. Lee*, 05-2098, p. 44 (La.1/16/08), 976 So.2d 109, 139; *State v. Patza,* 3 La.Ann. 512 (1848).

> Nevertheless, although evidence of other crimes, wrongs, or acts may not be admitted to prove the accused is a person of criminal character, evidence of other crimes has long been admissible if the state establishes an independent and relevant reason for its admission. *See State v. Anderson*, 45 La.Ann. 651, 654, 12 So. 737, 738 (1893). This very principle is embodied in our Code of Evidence at Article 404(B)(1), which provides, in pertinent part:

> > Except as provided in Article 412 [regarding a victim's past sexual behavior in sexual assault cases], evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof

11

> of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

La.Code Evid. art. 404(B)(1). While still prohibiting the state from introducing evidence of other crimes, wrongs, or acts to show a probability the accused committed the charged crime because he is a "bad" person, the rule articulated in Article 404(B)(1) allows admission for other purposes, *i.e.*, to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La.Code Evid. art. 404(B)(1); *Lee*, 05-2098 at p. 44, 976 So.2d at 139; *State v. Kennedy*, 00-1554, p. 5 (La.4/3/01), 803 So.2d 916, 920.

In the instant case, a *Prieur* hearing was held on May 30, 2012.[1] Following the testimony of several officers regarding the other crimes incidents and how they solved the cases, the trial court took the matter under advisement. On July 5, 2012, the trial court ruled that the above two criminal acts as testified to by Ms. Courville and Ms. Bourgeois were admissible at trial. The trial court's ruling was affirmed. *Richards*, 12-1063.

The Louisiana Supreme Court in *State v. Humphrey*, 412 So.2d 507, 523 (La.1981), held:

> When this court considers questions of admissibility of evidence in advance of trial by granting a pretrial application for supervisory writs (rather than deferring judgment until an appeal in the event of conviction), the determination of admissibility does not absolutely preclude a different decision on appeal, at which time the issues may have been more clearly framed by the evidence adduced at trial. Nevertheless, judicial efficiency demands that this court accord great deference to its pretrial decisions on admissibility, unless it is apparent, in light of the subsequent trial record, that the determination was patently erroneous and produced an unjust result.

---

[1] *State v. Prieur*, 277 So.2d 126 (La.1973), *superseded, in part, by statute*, La.Code Evid. art. 1104, *as recognized in State v. Taylor*, 16-1124, 16-1183 (La. 12/1/16), 217 So.3d 283.

*See also State v. Cash,* 03-853 (La.App. 3 Cir. 12/10/03), 861 So.2d 851, *writ denied,* 04-27 (La. 4/30/04), 872 So.2d 472, *and writ denied,* 04-232 (La. 5/7/04), 872 So.2d 1080; and *State v. Perry*, 12-298 (La.App. 3 Cir. 11/7/12), 101 So.3d 575, *writ denied,* 12-2657 (La. 5/24/13), 116 So.3d 659.

We have reviewed the pretrial writ record and find Defendant makes no new arguments that were not made to this court pretrial. However, in brief to this court, Defendant contends the trial court erred because it had originally agreed to sever these two offenses from the current indictment because of their prejudicial nature after the *Prieur* hearing. This is an inaccurate statement. By the time of the *Prieur* hearing, the assault and robbery of Ms. Bourgeois had been resolved, and a court date concerning the charged offense of the assault and robbery of Ms. Courville was the reason Defendant was in Lafayette on March 29, 2010, the evening Mr. Falgout was killed. The two offenses severed from this current indictment were other offenses allegedly committed by Defendant. *See Richards*, 12-1063. Furthermore, the evidence of other crimes admitted at trial formed part of the narrative to such an extent that the State could not have accurately presented its case without reference to it. The facts of the other crimes helped to solve the current crime. *State v. Brewington,* 601 So.2d 656 (La.1992). The inquiry to be made was whether the other crimes were "part and parcel" of the crime charged and were not offered for the purpose of showing that Defendant was a person of bad character. *Prieur*, 277 So.2d 126.

Previously this court determined, while the other crimes evidence may have been prejudicial, there was little danger of unfair prejudice, confusion of the issue, or misleading of the jury. Accordingly, this assignment of error is without merit.

## III. *Assignments of Error Numbers Two and Three.*

Defendant argues the trial court erred when it granted the State's challenge for cause of a potential juror, denied his challenges for cause of five potential jurors, and excused a juror for cause on its own motion without allowing the defense counsel the opportunity to question her.

Defendant contends he was deprived of his constitutional right to a fair and impartial jury. In *State v. Odenbaugh,* 10-268, pp. 23-26 (La. 12/6/11), 82 So.3d 215, 236-38, *cert. denied*, 568 U.S. 829, 133 S.Ct. 410 (2012) (second alteration in original), the supreme court stated:

> The United States Constitution's Sixth Amendment guarantees the accused the right to a trial by an impartial jury. The Louisiana Constitution Article I, Section 17(A) provides that a defendant has a right to challenge jurors peremptorily, with the number being fixed by law at twelve. LSA–C.Cr.P. art. 799. When a defendant uses all of his peremptory challenges, a trial judge's erroneous ruling depriving him of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of the conviction and sentence. *State v. Jacobs,* 99–1659, p. 5 (La.6/29/01), 789 So.2d 1280, 1284; *State v. Cross,* 93–1189 La.6/30/95), 658 So.2d 683, 686; *State v. Maxie,* 93–2158 (La.4/10/95), 653 So.2d 526, 534; *State v. Robertson,* 92–2660 (La.1/14/94), 630 So.2d 1278, 1280. A trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the entire voir dire reveals the trial judge abused its discretion. *Robertson,* 92–2660, 630 So.2d at p. 1281. Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges. *Cross,* 93–1189 at 1192, 658 So.2d at 686; *State v. Robertson,* 92–2660 at 3–4, 630 So.2d at 1280; *State v. Ross,* 623 So.2d 643, 644 (La.1993). An erroneous ruling depriving an accused of a peremptory challenge is a substantial violation of his constitutional and statutory rights and constitutes reversible error. *Cross,* 93–1189 at p. 6, 658 So.2d at 686; *State v. Bourque,* 622 So.2d 198, 225 (La.1993).
>
> "A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied." *State v. Jones,* 474 So.2d 919, 926 (La.1985). However, a trial court does not abuse its discretion when it refuses to excuse a prospective juror on the ground he is not impartial where, after further inquiry or instruction, the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and evidence. *Robertson,* 92–2660 at p. 4, 630 So.2d at 1281.

Thus, to establish reversible error warranting reversal of a conviction and sentence, defendant must demonstrate "(1) erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges." *Id.* at 1281. In the instant case, it is undisputed that defense counsel exhausted his peremptory challenges, and, therefore, need only show that the trial court abused its discretion by denying a challenge for cause.

. . . .

[W]hile cognizant of the broad discretion afforded a district court when ruling on cause challenges, this Court has cautioned that a prospective juror's responses cannot be considered in isolation and that a challenge should be granted, "even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably [inferred]." *State v. Jones,* 474 So.2d 919, 929 (La.1985); *See State v. Frost,* 97–1771, p. 4 (La.12/1/98), 727 So.2d 417, 423; *Maxie,* 93–2158 at 16–17, 653 So.2d at 535; *State v. Hallal,* 557 So.2d 1388, 1389–1390 (La.1990) (per curiam); *State v. Brown,* 496 So.2d 261, 264–65 (La.1986); *State v. Smith,* 430 So.2d 31, 38 (La.1983). Yet a refusal to disqualify a prospective juror on grounds he is biased does not constitute reversible error or an abuse of discretion if, after further examination or rehabilitation, the juror demonstrates a willingness and ability to decide the case fairly according to the law and evidence. *State v. Howard,* 98–0064, pp. 7–10 (La.4/23/99), 751 So.2d 783, 795-797[.]

Louisiana Code Criminal Procedure Article 799, in pertinent part, provides that "[i]n trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant." In the instant case, defense counsel used only eleven peremptory challenges prior to twelve jurors being accepted by defense and the State and the one additional peremptory challenge allowed by the trial court to choose the two alternative jurors.

According to La.Code Crim.P. art. 797, in pertinent part, the State or Defendant may challenge a prospective juror for cause on the ground that:

> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
>
> . . . .

15

(4) The juror will not accept the law as given to him by the court[.]

Finally, as noted above, the trial judge is vested with broad discretion in ruling on challenges for cause.

> This is necessarily so because the trial court has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questioning by the parties' attorneys. *State v. Lee*, 93-2810, p. 9 (La.5/23/94), 637 So.2d 102, 108. Such expressions and intonations are not readily apparent at the appellate level where a review is based on a cold record. *Id.*

*State v. Munson*, 12-327, p. 9 (La.App. 5 Cir. 4/10/13), 115 So.3d 6, 12, *writ denied*, 13-1083 (La. 11/22/13), 126 So.3d 476.

*Defendant's challenges for cause denied by the trial court*:

Defendant alleged that potential jurors, Misty Sonnier, Caffery Dugas, Scott Domingue, Theresa Hagendorfer, and Keith Patin exhibited bias, prejudice, or partiality towards him during voir dire and were not adequately rehabilitated as claimed by the trial court.

However, even if the trial court abused its discretion when it denied the challenges for cause, this assignment of error has no merit in that Defendant cannot show prejudice. As noted, to prove reversible error, a defendant is required to show an erroneous denial of a challenge for cause and the use of all his peremptory challenges. *See State v. Turner*, 96-845 (La.App. 3 Cir. 3/5/97), 692 So.2d 612, *writ denied*, 97-2761 (La. 2/20/98), 709 So.2d 773.

In the current case, for each potential juror challenged for cause and subsequently denied by the trial court, Defendant had peremptory challenges available to excuse the juror after the trial court denied his challenge for cause. He was not forced to accept a juror he felt was prejudicial to his case because all of his peremptory challenges were used. Defendant has failed to show prejudice in this case.

16

*The State's challenge for cause granted by the trial court:*

Defendant argues the trial court granted the State's challenge for cause for prospective juror Chelsea Lewis. Ms. Lewis stated she did not believe that people on drugs or alcohol could form the requisite intent to commit a crime. Ms. Lewis testified her biological father committed murder when he was intoxicated. She stated he was not in his right mind when he did it and should have been given a second chance. The trial court questioned Ms. Lewis:

> THE COURT: Yes. If someone by chance was on drugs or alcohol, it would affect your ability to find them guilty?
>
> A. It does affect me. Two or three days ago if I would see him sober, I would not do this. I could find that he didn't know what he was doing and I would give him a second chance.
>
> THE COURT: Would it affect your ability to find someone guilty or not guilty?
>
> A. Yes.

Ms. Lewis then testified her husband was currently in prison for crimes committed while he was on drugs and alcohol. She admitted she had a drug and alcohol problem, and she was broke because of it. She continued to assert she did not believe someone on drugs could form the requisite intent to commit crimes.

The State challenged Ms. Lewis for cause pointing out she explicitly stated that a person on drugs and/or alcohol was not capable of forming the intent to commit a crime. Defense counsel objected, stating that Ms. Lewis did say she would try to be fair and impartial. The trial court granted the State's challenge for cause, stating:

> THE COURT: I will excuse her for cause in regards to drugs and alcohol especially what she said about drugs and alcohol. She doesn't believe people can form an intent if they're on drugs and alcohol.
>
> She may have a hard time. The State would have a hard time convincing her. She is excused for cause.

In brief, Defendant argues Ms. Lewis was sufficiently rehabilitated when, upon questioning by defense counsel, she had said that she would try to be fair should she be picked for the jury. However, in *Munson*, 115 So.3d 6, the defendant argued the trial court erred when it granted the state's challenge for cause of a potential juror who expressed strong reluctance to convict based on the uncorroborated testimony of a single witness. The fifth circuit noted, under Louisiana jurisprudence, a single witness' testimony was usually sufficient in the absence of internal contradiction or irreconcilable conflict with the evidence. After an attempt to rehabilitate the juror, the trial court stated "'I'm convinced after listening to Ms. Herbert, no matter what the state proves in testimony alone, she thinks there is a high burden, higher burden, so I'm going to grant their motion for cause.'" *Id.* at 13.

In the current case, Ms. Lewis' opinion regarding the effect of drugs and alcohol on the mental capacity to form intent placed an impossible burden on the State. If a defendant proves he was intoxicated at the time of the offense, the state then has the burden of negating that defense by proof beyond a reasonable doubt. Ms. Lewis's responses reflected a bias and an inability to render a judgment according to the law. We cannot say the trial court abused its discretion when it granted the State's challenge for cause.

*Trial court's release of a potential juror for cause:*

Simone Broussard told the State she did not want to be on the jury. She stated she was not a good judge of character. She suffered from anxiety and was on medication for the anxiety. Although she had no opinion of Defendant's guilt or innocence, she stated it made her very nervous having to make judgment on someone. She said if she were picked for the jury she would not be able to communicate with the other jurors. Later, when the prospective jurors were asked

by the State if the State met its burden of proof could they convict Defendant to a life sentence, Ms. Broussard repeated she did not "want to be the deciding factor."

The State challenged Ms. Broussard for cause because of her apparent anxiety and her admission she would not be able to communicate with the rest of the jurors. The trial court denied the challenge. Defense counsel thought Ms. Broussard would work it out if she were chosen as a juror.

The trial court later stated:

> THE COURT: Okay, Ms. Simone Broussard, Number 120. It was observed in the bathroom by court personnel during the break - - she's been complaining about anxiety problems, telling me she has anxiety problems. She's breaking down in the bathroom right now crying hysterically. The inference was made that they wouldn't be able to get her out of the bathroom. So, I've noticed as the day progresses that she's getting quieter and quieter and quieter and not answering the questions. She's being very low. I think there's cause there, obviously. She won't be able to pay attention in this trial if she's breaking down and having problems. So I'm releasing her at this point. I don't think she could make it through the trial.

Defense counsel objected without reason. In brief, Defendant argues he did not have an opportunity to question Ms. Broussard. The record shows defense counsel questioned Ms. Broussard during the voir dire process. Moreover, while defense counsel objected, he did not state a reason for his objection. A defendant is limited to the grounds he stated at the time of the trial court's ruling to support his objection. A new basis for an objection may not be first raised on appeal. *State v. Mitchell,* 08-136, p. 20 (La.App. 5 Cir. 1/13/09), 7 So.3d 720, 733.

Ms. Lewis demonstrated her inability to be on a jury by her statement that she would not be able to or wanted to make a decision or communicate with the jury. Moreover, her distress would only serve as a distraction.

There is no merit to Defendant's assignments of error numbers three and four.

## DECREE

For the foregoing reasons, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**